UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LINDA O. GORDON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-05-3689 |
| | § | |
| MARY E. PETERS, UNITED STATES SECRETARY | § | |
| OF TRANSPORTATION, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

Pending before the court is defendant's motion to dismiss plaintiff's disparate impact claim and claim for enforcement of alleged finding and order. Dkt. 22. Defendant's motion to dismiss was filed pursuant to any one of rules 12(b)(1), 12(b)(6), or 56. Plaintiff argues that the motion should be reviewed under a rule 56 standard. The court agrees. Therefore, defendant's motion to dismiss is converted to a rule 56 motion for summary judgment. Also, pending before the court is defendant's motion for summary judgment. Dkt. 21. Upon consideration of the motions, the summary judgment evidence, and the applicable law, the court finds that the defendant's motion to dismiss plaintiff's disparate impact claim should be GRANTED and defendant's motion for summary judgment likewise should be GRANTED. In light of the court's rulings on the defendant's motions, the plaintiff's cross motion for summary judgment is DENIED. Dkt. 29.

## BACKGROUND

The plaintiff Linda Gordon has been an employee of the FAA since 1982. In October of 2003, she applied for two open positions, located at the Houston Air Route Traffic Control Center ("HARTCC"): an Operations Supervisor ("OS") position, and an Operations Manager ("OM")

position.  According to the defendant, either of the two positions would have been a promotion for Gordon carrying a significant raise.[1]  However, the OM position was the higher promotion of the two.  The FAA posted the jobs internally. The human resources group then narrowed the selection for the OM position to 17 candidates.  That group was further narrowed to four people based on a series of numerical ratings that included experience, education level, and former supervisor feedback.  The final four candidates consisted of three men and one woman—Gordon.  Based on the recommendation of the members of the management team at HARTCC—consisting of six men and one woman—D'Ambrosio, the deciding officer, did not offer one of the three open Operations Manager positions to Gordon.  Instead she was promoted to the lesser position of Operations Supervisor.

Even though she received the OS position, Gordon filed a complaint with the agency alleging sex discrimination because she was not given the OM position.  After the requisite counseling period was complete, an investigation was commenced.  Upon completion of the investigation, Gordon requested and was granted a hearing in front of a U.S. Equal Employment Opportunity Commission ("EEOC") Administrative Law Judge ("ALJ").  A hearing on the record was held on July 20-21, 2005.  On August 19, 2005, the ALJ issued his finding.

> I find that Complainant has established a *prima facie* case of sex and reprisal discrimination.  I also find that Complainant has not, by a preponderance of the facts, shown the Agency's reasons were pretextual.

He additionally explained, in the body of his report, that the evidence did not support a claim that the FAA's selection process had an unlawful adverse impact on women.  However, to the confusion

---

[1]  The nomenclature for the various positions and levels within the FAA is nearly incomprehensible to the uninitiated.  However, it does seem from the record that the OS position would have been a promotion from Gordon's position at the time as a specialist.  And, Gordon does not dispute defendant's statement that either position would be a promotion.

of the parties and in direct conflict with his analysis, he then stated in his findings and decisions that he "further [found] that the Agency's selection process *has* an adverse impact on the selection of females." Dkt. 21, Ex. B (emphasis added).

On October 27, 2007, Gordon filed suit in the district court challenging the ALJ's finding of no discrimination and seeking enforcement of the ALJ's alleged finding of adverse impact. The Agency requested clarification from the ALJ regarding the adverse impact finding, and on November 14, 2005 the ALJ issued a corrected order entering judgment. The corrected order was identical to the first order except that the findings and decisions were corrected to read "I further find that the Agency's selection process *did not* have an adverse impact on the selection of females." Dkt. 21, Ex. A (emphasis added).

## ANALYSIS

The defendant moves the court to dismiss Gordon's disparate impact claims on the ground that she did not exhaust her administrative remedies. Dkt. 22. In addition defendant moves for summary judgment on Gordon's discrimination claim. Dkt. 21. Plaintiff responds with a cross motion for summary judgment seeking enforcement of the ALJ's August 19, 2005 finding of disparate impact. Dkt. 29.

**1.     Motion to Dismiss Disparate Impact Claims**

Although the motion is styled as a motion to dismiss, both parties agree that it is appropriately reviewed as a motion for summary judgment.

*A.     Summary Judgment Standard*

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

3

material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, L.P. v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999).   The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).  An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001), *cert. denied*, 122 S.Ct. 347 (2001).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).  Since exhaustion is a question of law, it is appropriate for review on summary judgment. *See Connor v. Quartermain*, 477 F.3d 287, 291 (5th Cir. 2007).

   B.     *Title VII Administrative Exhaustion Requirement.*

   "Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin." *Grimes v. Texas Dep't of Mental Health*, 102 F.3d 137, 140 (5th Cir.1996).  Section 717 of the Act allows federal employees to bring private civil causes of action in district court for proscribed discriminatory employment practices.  42 U.S.C. § 2000e-16. "As a precondition to seeking this judicial relief, however, complaining employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).  The exhaustion requirement must be construed liberally to aid the unsophisticated pro se claimant. *Id.*; *see also Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).  Courts must still bear in mind that "a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to

4

achieve non-judicial resolution of employment discrimination claims." *Pacheco*, 448 F.3d at 788-89.  To that end, the interpretation of the exhaustion requirement, while it may be liberal,  must still be exacting enough to preserve Congress's goal of voluntary compliance.  *Id.*

The Fifth Circuit has set forth a test to determine whether a complaint has been administratively exhausted.

> A Title VII cause of action "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination."

*Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995) (quoting *GAF Chemical*, 995 F.2d at 578 (quoting *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983))).  The courts are instructed to "engage in [a] fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label. *Pacheco*, 448 F.3d at 789.

In the instant case, the defendant argues that Gordon's formal complaint clearly states only claims of disparate treatment rather than disparate impact.[2]  The FAA claims that Gordon's formal complaint argues only that Gordon was allegedly more qualified for the OM position than the men who were chosen.  Additionally, the agency points to the fact that Gordon's complaint never references any neutral policy that allegedly impacted women adversely.  Moreover, the FAA claims that Gordon had the opportunity to amend the claims during the administrative process, but did not do so.  Gordon responds that her formal complaint did, in fact, contain enough information regarding disparate impact that the investigation could reasonably be expected to examine the FAA's policies

---

[2]  As discussed below, the Fifth Circuit recognizes these as distinct claims.

regarding promotions and their impact on women.  She argues that since the hearing in front of the ALJ is a part of the investigative process, and the ALJ discussed adverse impact, the investigation could reasonably be expected to include disparate impact—because in actuality it did.  The court does not agree.

            i.       Hearing vs. Investigation

As a threshold matter, the court does not agree that for the purposes of exhaustion, the hearing is a part of the investigation.  First, the reason exhaustion is construed liberally is to help the average individual filing an EEOC claim.  Those individuals are generally not aided by counsel when they make their formal complaint at the very beginning of the process.  Conversely, the hearing comes at the end of the process by which time the complainant will have acquired counsel.  Therefore, the policy reason to construe the EEOC claim liberally is no longer present by the time of the hearing.  Second, while Gordon points to a single sentence in the Code of Federal Regulations in support of the statement that the hearing is part of the investigation, a review of the entire section reveals that the hearing is separate and distinct from the investigation.  Section 1614.109 of Title 29 of the Code of Federal Regulations addresses the conduct of hearings in front of the EEOC ALJ for agency employees.  29 C.F.R. § 1614.109(e).

> Attendance at hearings will be limited to persons determined administrative judge to have direct knowledge relating to the complaint.  *Hearing are part of the investigative process and are thus closed to the public.*  The administrative judge shall have the power to regulate the conduct of a hearing, limit the number of witnesses where testimony would be repetitious, and exclude any person from the hearing for contumacious conduct or misbehavior that obstructs the hearing.

*Id.* (emphasis added).  Taken in context, it is clear that § 1614.109(e) deals with the nuts and bolts of running the hearing in front of the ALJ.  The statement concerns the privacy issues of the

complainant rather than defines the stage of the proceedings.  Moreover, a comparison of the section governing hearings and the section governing investigations reveals that the two processes are distinct from each other.  The investigation of complaints is governed by a completely different section from the section regarding hearings.  *Compare* § 1614.108 (investigations) *and* § 1614.109 (hearings).  Additionally, the investigation and the hearing are conducted by separate entities.  The investigation is conducted by the agency in question, while the hearing is conducted by an ALJ appointed by the EEOC.  *Compare* § 1614.108(a) *and* § 1614.109(a).  The complainant may not request a hearing until the investigation is complete.  § 1614.108(g).  And, the hearing allows for a discovery period separate and apart from the investigation.  § 1614.109(d).  These are just a few indicators that the sentence Gordon uses does not support her contention that the hearing is part of the investigation.  Therefore, for Gordon to show administrative exhaustion, she must rely upon her initial EEOC charge and the facts surrounding the agency investigation.

ii.    Disparate Treatment vs Disparate Impact

The Fifth Circuit has recently revisited the distinction between these "two largely separate theories of discrimination."  *Pacheco*, 448 F.3d at 787.  Disparate treatment claims address "employment actions that treat an employee worse than others based on the employee's race, color religion, sex or national origin."  *Id.*  Disparate treatment revolves around the individual and requires proof of discriminatory motive.  *Id.*  Disparate impact claims deal with neutral employment practices that have a proportionally adverse effect on the protected group.  *Id.*  While discriminatory intent may be present, it need not be demonstrated by the plaintiff to succeed on a disparate impact thoery.  *Id.*  The parties agree that Gordon's EEOC claim contained a disparate treatment claim.  However,

7

the defendant argues that Gordon's complaint did not encompass a claim for disparate impact.  The court agrees.

Gordon contacted the FAA's EEOC counselor on April 16, 2004.  Dkt. 21, Ex. F, part 2.  The counselor met with Gordon and D'Ambrosio to attempt to negotiate some type of voluntary agreement.  The notes from the counselor's meetings with Gordon indicate that Gordon felt that she had been personally slighted.  Gordon told the counselor that she felt there was a bias against putting women in management positions.  However, Gordon was most upset about not receiving the larger OM raise and money to move rather than the smaller but still substantial OS raise.  In fact, Gordon agreed to settle her claim for an upgrade in salary to the OM level and money for her move to Houston.  No agreement was reached.

The counselor later issued a notice of the right to file a discrimination claim.  The notice clearly stated that Gordon's "complaint must be specific and contain only those issued discussed with" the counselor.  *Id.*  Gordon filed her formal complaint on July 1, 2004.  Her attached narrative was single spaced in an 8 point font or smaller and covered nearly two pages.  For the majority of that two page narrative, Gordon detailed her credentials, experience, and overall fitness for the OM position. She spent another few paragraphs detailing conversations with other people regarding her job performance.  In the second to last paragraph, she briefly addressed gender for the first time.

> The individuals, all male, selected for the Operations Manager positions at [Fort Worth] and at [HARTCC] received salary increases based on their previous highest paid salary. [HARTCC] continues to exhibit institutional sexism by not employing more than one second level female 2152 at a time.  There were 17 bids for the OM position, five of which were females.  None were selected.

*Id.*  She then reverted to discussing her performance reviews in the past.  In the section of the form asking what corrective action she was seeking, Gordon answered:

To be made whole in every way, including but not limited to:
> Be promoted to position of Operations Manager at Houston ARTCC;
> Full backpay with interest from date I would have originally been selected as said Operations Manager at Houston ARTCC;
> Any and all raises I would have been entitled to; calculated cumulatively;
> Pay to be determined beginning with my highest previous rate;
> Full PCS move; An earlier promotion date (similar to other selectees);
> Reimbursement for days expended while preparing for move along with self packing; and
> other remedies deemed appropriate.

Dkt. 21, Ex. F, part 2. She did not request that women be given more management opportunities. The remedy she sought was solely her own.

The U.S. Department of Transportation ("DOT") reviewed Gordon's complaint and accepted two claims.

1.   Whether the FAA discriminated against Gordon, based on her sex (female) when she was not selected for an Operations Manager position on March 14, 2004.

2.   Whether the FAA discriminated against Gordon, based on reprisal (EEO activity) when you were assigned to a different specialty in May 2004.

*Id.* Gordon has not raised a reprisal claim in her federal civil suit, so the court will not address it.

In a strikingly similar case, the Fifth Circuit examined the administrative charge of a Hispanic employee of the FAA. The plaintiff in *Pacheco* argued that his formal complaint encompassed a disparate impact claim sufficient to exhaust his administrative remedies. *Pacheco*, 448 F.3d at 787. In his formal complaint, Pacheco alleged three separate incidents of discrimination. *Id.* at 791. First, he was passed over for promotion to a supervisor position in favor of a "good old boy" who had less experience. *Id.* Second, several years before he applied for a supervisor position in a different region. *Id.* He was told at the time that the Southern Region doesn't hire out of region. *Id.* However, three months later they hired a different candidate outside the Southern Region. And

third, like other coworkers, Pacheco posted a picture of his son on his mail tray.  His son's picture was defaced, but no other picture was bothered.  *Id.*

Even though only the first claim was accepted due to timeliness, the Fifth Circuit looked to all three complaints for context.  Additionally, the court reviewed the factors for a prima facie case of disparate impact to determine whether a disparate impact claim could have reasonably flowed from his claim.  *Id.*  "A disparate-impact plaintiff must show (1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class."  *Id.*  The court found that Pacheco's administrative complaint was too narrow to reasonably encompass a disparate impact claim based on the combination of three main reasons.  The court began with the fact that "Pacheco's administrative charge allege[d] none of the elements of disparate impact.  Instead, it [was] facially a disparate treatment claim . . . alleging that he was singled out for intentional discrimination because of his race."  *Id.* at 791.  Next, the court stressed that the cornerstone of a disparate impact investigation was the identification of a neutral policy.  *Id.* at 792.  Pacheco's claim failed to identify any neutral employment policy.  *Id.*  The court contrasted Pacheco's claim with one at issue in a Second Circuit case.  *Id.* at 790 (citing *Gomes v. Avco*, 964 F.2d 1330, 1335 (2d Cir. 1995)).  In *Gomes*, the employee pointed to an "eight-years experience" rule for promotions in his administrative complaint even though he did not argue disparate impact.  *Id.*  In that case the Second Circuit found that "'once the EEOC investigated the case and found that [the plaintiff] did not satisfy the eight year rule, it would have been perfectly natural for the EEOC to question the necessity of the eight year rule itself.'"  *Id.* (quoting *Gomes*, 964 F.2d at 1334).  Last, the court cited the fact that Pacheco's claim "complained of past incidents of disparate treatment only."  *Id.*  The court pointed to Pacheco's choice of remedy—a paid transfer—and unquestioning acceptance of the "DOT's

10

reasonable interpretation of the charge as being only one of disparate treatment" as support that the complaint concerned only disparate treatment *Id.* Citing all of these factors, the Fifth Circuit upheld the district court's 12(b)(1) dismissal. *Id.*

In the instant case, Gordon's complaint suffers the same infirmities as the complaint in *Pacheco*. Gordon's complaint facially alleges disparate treatment. She alleges that she was not chosen for the OM position in Houston even though she was the most qualified applicant because she is a woman. Additionally, she claims she was not chosen for an OM or an OS position in Fort Worth also because she is a woman. Finally, she claims that because of her EEO activity, she was given a specialty position in Austin instead of the specialty position in Lufkin she was promised. She does not explain the difference, if any, between the two specialty positions. As in *Pacheco*, her claims are that she "was singled out for intentional discrimination because of [her gender]." *Id.* Additionally, she points to no neutral policy employed by the FAA that created a disproportionately adverse impact on women. In her briefing before the EEOC hearing and her complaint in this case, she points to a lack of safeguards in the selection process to ensure a level playing field for women. However, as discussed above, her statements to the ALJ and to this court are not timely and will not be considered when determining exhaustion. Lastly, like Pacheco, Gordon has complained mainly of past incidents of disparate treatment only. The remedies she requested were individualized and particular to her. And, she made no objection to the "DOT's reasonable interpretation of the charge." *Id.* However, unlike Pacheco, she does make one statement in her administrative complaint that could be construed as alleging ongoing discrimination. HARTCC "continues to exhibit institutional sexism by not employing more than one second level female 2152 at a time." Dkt. 21, Ex. F, part 2. And, she does point to the treatment of other women, at least in a general manner.

11

"There were 17 bids for the OM position, five of which were females.  None were selected." *Id*. Including allegations that other women have been treated in a discriminatory manner will not suffice to broaden her administrative complaint, because it is "not enough for the plaintiff to have alleged that other colleagues were affected because she [has] failed  to 'identify a specific, facially neutral employment practice.'" *Pacheco*, 448 F.3d at 790 (quoting *Woodman v. WWOR-TV*, 293 F. Supp. 2d 381, 390 (S.D.N.Y. 2003) (refusing to expand an administrative charge to include disparate impact although plaintiff alleged that many others had also be fired)).  Accordingly, the court finds that based on the facts in the record and the formal EEO complaint, a claim for disparate impact could not "reasonably be expected to grow out of the charge of discrimination." *Pacheco*, 448 F.3d at 789.  Therefore, the defendant's motion to dismiss plaintiff's disparate impact claim will be granted.

**2.      Defendant's Motion for Summary Judgment**

Also before the court is defendant's motion for summary judgment on plaintiff's remaining claim of discrimination.

### A.      *Summary Judgment Standard*

As discussed above, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, L.P. v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999).  The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322.

If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required.  *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant.  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163-64 (5th Cir. 2006).  The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.  *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 993 (5th Cir. 2005).  However, the nonmovant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."  *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).  By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts."  *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d

13

869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

      B.    *Disparate Treatment*

      The court uses the familiar burden shifting inquiry set out in *McDonnell Douglas* when evaluating a claim for employment discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817 (1973). Initially, the plaintiff must present a prima facie case of discrimination. *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 420 (5th Cir. 2006). "Once this prima facie case is established, the employer has an opportunity to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* (citing *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir.2003)). If "the employer offers evidence of such a legitimate reason, the burden shifts back to the plaintiff-employee to raise a genuine issue of material fact that this non-discriminatory reason is merely pretextual." *Id.*

      The court finds that Gordon has failed at the outset by not establishing that she suffered an adverse employment action. "To establish a prima facie case [of sex discrimination], the plaintiff must show that '(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated.'" *Willis v. Coca Cola Ent. Inc.*, 445 F.3d 413, 420 (5th Cir. 2006) (quoting *Rutherford v. Harris Co., Tex.*, 197 F.3d 173, 184 (5th Cir.1999)); *Williams v. United States Dept. of Navy*, 149 F. App'x. 264, 269 (5th Cir. 2005). "Significantly, a plaintiff must establish all four elements of the case in order to prove that she was treated differently." *Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1999) (citing *Garcia v. Woman's Hosp. of Texas*, 143 F.3d 227, 230 (5th Cir.1998) (per curiam)).

In failure to promote cases, the adverse employment action is the failure to promote.[3]  *See Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).  However, for an action to qualify as adverse, Gordon must show that she has suffered a "materially adverse" change in the terms or conditions of employment because of the employer's action.  *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000).

Both Gordon and the ALJ have viewed the instant case in terms a failure to promote Gordon to the OM position.  If the OM position is taken in isolation, she would appear to present a prima facie case.  However, Gordon's discrimination case should not be viewed so narrowly.  First, Gordon does not show the sine qua non of employment discrimination; she did not suffer a materially adverse change in her employment status.  If anything, she improved her employment status significantly when she was promoted to the OS position.  And second, she actively pursued the OS position.  She sent a clear signal to the deciding officer over both positions that she was interested in both.  She applied for both the OS and OM positions at the same time. The OS position included more than a $17,000.00 per year raise and a move to Houston—a move she desired and requested. The OS position was not a "consolation prize" for Gordon.  Perhaps, if she had been offered the OS position instead of the OM position <u>when she had not applied for it</u>, then she could argue that she suffered an adverse employment action.  Instead, she has earned a significant improvement in both salary and location.  The court finds that she cannot make a prima facie case for discrimination.

Even if the court were to view the OM position in complete isolation and find that Gordon

---

[3]  Many courts rephrase the prima facie test to reflect this.  "In a failure to promote claim under Title VII, a plaintiff must show that: (1) she was within a protected class; (2) she was qualified for the position sought; (3) she was not promoted; and (4) the position she sought was filled by someone outside the protected class."  *Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001).

had suffered an adverse employment action, her claim would still fail because she has not shown that the FAA's legitimate business reason for not promoting her to the OM position was pretextual.  Mr. D'Ambrosio, the deciding officer, found that all of the candidates were equally qualified.  However, Gordon's immediate supervisor did not recommend her for the OM position, because she needed more experience.  The other candidates had strong recommendations from their respective supervisors.  The plaintiff argues that she was more qualified for the position as evidenced by her MPP score.  This, however, is not entirely accurate.  The selection matrix used to determine the finalists for the OM position looked at four variables.  The first was a score based on experience, education and classwork—the MPP score.  Gordon's score was the highest in that category.  However, that score merely places the applicant into the finalist group and is disregarded after that point.  Additionally, some of the candidates had more recent supervisory experience and/or experience more closely resembling HARTCC.  The second variable is the applicant's score from the questionnaire answers of the applicant's supervisor.  In this category, Gordon was tied for the lowest score with a total of 32 points out of a maximum possible of 40.  The third variable is based on feedback from the supervisory committee ("SUPCOM") made up of all of the operations supervisors within the facility.  Dkt. 21, Ex. G, at 93.  Gordon scored towards the middle of the group with a rating of "slightly recommend."  The last factor was the recommendation of the management team.  In this case, the management team did not recommend Gordon.  They felt that the lukewarm recommendations that they received on Gordon from her current supervisor and past supervisors added to the types of experience offered by the other candidates argued in favor of the other candidates rather than Gordon.  While, D'Ambrosio could have hired Gordon in spite of the fact that his management team did not recommend her, the feedback from her supervisors caused him to choose against putting her in the OM position.  However, he put her in the OS position so he

could see her work for himself in case another OM position became available.  The FAA has articulated a legitimate, non-discriminatory reason for not promoting Gordon to the OM position. Accordingly, the burden now shifts to the plaintiff to demonstrate that the FAA's given reason is a pretext.

The court should not "engage in second-guessing of an employer's business decisions." *Lemaire v. Louisiana Dept. of Transp. and Development*, 480 F.3d 383, 391 (5th Cir. 2007) (citing *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir.2005), cert. denied, --- U.S. ----, 126 S.Ct. 1027, 163 L.Ed.2d 855 (2006)). "Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones." *Id.* (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir.1991). "Therefore, [Gordon] must do more than simply argue that [the FAA] made an incorrect decision." *Id.*  The plaintiff offers no argument regarding pretext in her response to the motion for summary judgment.  Since, the burden of proof is on the plaintiff, the court cannot assume that she could show pretext at trial.  Alternatively, Gordon could argue mixed-motive— "that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Keelan v. Majesco Software Inc.*, 407 F.3d 332, 341 (5th Cir. 2005).  However, beyond arguing that since no women were chosen for any of the three OM spots, and therefore there must be discrimination involved, the plaintiff makes no mixed motive argument either.  In reality, D'Ambrosio had hired women in management positions before Gordon, and hired Gordon herself for the OS position.  Accordingly, the court finds that Gordon has shown no genuine issue of material fact as to pretext or mixed motives.  Therefore, Gordon's claim fails and the defendant's motion for summary judgment must be GRANTED.

### 3.    Plaintiff's Cross-Motion for Summary Judgment

The plaintiff has cross-moved for summary judgment asking the court to enforce the ALJ's

August 19, 2005 ruling on disparate impact.  The plaintiff's argument is based on the deadlines as defined in the CFR for objections to the ALJ's ruling.  Regardless of the plaintiff's position respecting the deadlines, the court declines to enforce the ALJ's August 19, 2005 ruling on disparate impact for the simple reason that the court has found that the disparate impact claim was not administratively exhausted.  Therefore, the plaintiff's cross-motion for summary judgment is DENIED.

### CONCLUSION

The court finds that the plaintiff did not exhaust her administrative remedies for her claim of disparate impact discrimination.  Therefore, defendant's motion to dismiss is GRANTED.

Moreover, the court finds that the plaintiff suffered no adverse employment action for her claim of disparate treatment discrimination.  Alternatively, the plaintiff has not shown that the FAA's legitimate reason for not promoting her to the OM position was a pretext or based on an impermissible motive.  Therefore, the defendant's motion for summary judgment is GRANTED.

Lastly, in light of the court's findings on the disparate impact claim, the plaintiff's cross-motion for summary judgment is DENIED.

It is so ORDERED.

Signed at Houston, Texas on April 24, 2007.

_____
Gray H. Miller
United States District Judge

18